I5TVJONC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MICHAEL J. JONES,

                    Plaintiff,

             v.                          17 CV 3445 (GHW)

BETH ISRAEL HOSPITAL,

                    Defendant.           TELEPHONE CONFERENCE

------------------------------x
                                         New York, N.Y.
                                         May 29, 2018
                                         2:38 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                         District Judge

                         APPEARANCES

MICHAEL J. JONES, pro se

AARONSON RAPPAPORT FEINSTEIN & DEUTSCH
     Attorneys for Defendant
BY:  PETER J. FAZIO

I5TVJONC

1          (In chambers)

2          THE COURT:  This is Judge Woods.

3          Do I have Mr. Jones on the line?

4          MR. JONES:  Hello?

5          THE COURT:  Yes, Mr. Jones.  This is Judge Woods.

6          Are you there?

7          MR. JONES:  Yeah, I'm here.

8          THE COURT:  Good.

9          Do I have counsel for defendant on the line?

10          MR. FAZIO:  Yes, your Honor.  Peter Fazio.

11          THE COURT:  Good.  Thank you very much.

12          So this is a conference in connection with your case,

13  Mr. Jones.  There are a number of things that I want to do in

14  this conference.

15          First I want to talk briefly about the pleadings in

16  the case, in other words, the complaint and the answer.

17          Second, I hope to talk about the discovery schedule

18  and the other steps that we'll be taking to litigate the case

19  going forward.

20          Last, I'm going to raise the question of what, if

21  anything, I can do to help the parties amicably resolve the

22  case, that is, reach a settlement.

23          That's my agenda for the conference today.

24          Mr. Jones, before we begin, is there anything that

25  you'd like to raise to make sure that we talk about it during

I5TVJONC

1   the conference?

2          MR. JONES:  I'm not sure if it's going to be

3   productive, but I would like the Court to know that my

4   situation is very -- is not very good right now.  My health is

5   bad and I'm locked in a Special Housing Unit where I don't have

6   access to a library or any kind of legal help.  For the past

7   maybe four or five months I've been in the same situation.

8   Even when I was on Rikers Island, I had no legal help, I had no

9   access to the law library, and my health and my condition is

10  not well.

11         THE COURT:  I'm sorry to hear that.

12         MR. JONES:  If the courts could help me obtain a

13  lawyer, a public defender or whatever the case may be, I would

14  appreciate it, to help me with the process going forward.

15         THE COURT:  Thank you.

16         First, let me say I'm sorry both that you're there,

17  the SHU, and that you're having these health issues.  I'm very

18  sorry about that.

19         Let me talk to you about the request that I appoint a

20  lawyer to represent you.

21         MR. JONES:  Yes.

22         THE COURT:  The first thing, unfortunately, I think, I

23  need to tell you is that in these civil cases, unlike in a

24  criminal case, litigants aren't entitled to have a lawyer

25  appointed for them.

I5TVJONC

1          In the criminal context, the United States

2    Constitution guarantees --

3          MR. JONES:  Yes.

4          THE COURT:  -- people a right to counsel.

5          MR. JONES:  I don't mean to cut you off, sir.  I

6    understand those facts.

7          But I was hoping maybe you could -- do you know anyone

8    *pro bono* that I can write to, see if I can get *pro bono* someone

9    to help, at least just advice?

10          THE COURT:  Thank you.

11          Let me work my way to that.

12          MR. JONES:  All right.

13          THE COURT:  So because in the context of a civil case,

14    parties don't have a right to counsel; instead, what the Court

15    does is rather than appointing someone, the Court would make a

16    request for a lawyer to volunteer their time to work as a *pro*

17    *bono* lawyer in connection with the case.  There is no

18    compensation for those lawyers who are volunteering their time,

19    and the Court has no budget or resources to pay them to do that

20    work.

21          So I can, under certain circumstances, ask the lawyers

22    to volunteer their time in connection with a civil case like

23    this.  But there are a number of things that I have to -- I'm

24    directed to consider before making that kind of a request.

25          Among the things that I'm supposed to consider are

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I5TVJONC

things like the efforts that a party has taken to find a lawyer

on their own, as well as my view regarding the -- I'll call it

merit of the underlying case.  These are factors that I'm

guided to consider in part because the resources of these

private lawyers who volunteer their time are limited.  And so

I'm directed to consider requests with at least those factors

in mind.

So there are a couple of things that I'd like to ask

you do, if you can, which would be helpful for me in evaluating

a request.

First, if you can, it would be helpful if you could

write a written request for counsel.  I'll send you a form

motion that you can fill out and send back to me.  It will say

things like what efforts you've taken to find counsel

independently.  That will be helpful for me.

The other thing I should say though is that frequently

in this context, which is very early in the life of the case,

it's hard for me to evaluate how meritorious your case is.  And

I say that just because it's early days in the case in terms of

its procedural history.  We've only just gotten past the

defendant's motion to dismiss and we haven't yet begun

discovery.

So while I don't have a position on your request yet,

I can tell you that frequently in this context, in other words,

early in the litigation, it is hard for me to determine that a

I5TVJONC

```
 1    case has sufficient merit to justify going to the lawyers who
 2    volunteer their time to request that they work on the case.
 3          One thing that I want to highlight for you though, if
 4    I can, Mr. Jones, is that there are a lot of lawyers who
 5    represent people in civil rights cases of this type.
 6          MR. JONES:  Can I say one thing please?
 7          THE COURT:  I'm sorry?
 8          MR. JONES:  Can I say one thing?
 9          THE COURT:  Please do.
10          MR. JONES:  I've contacted multiple lawyers.  But once
11    I tell them the nature of my charges, they don't want to be
12    involved with the case because they say that I'm not going to
13    get anything beneficial toward them because the nature of my
14    charges, why I'm incarcerated in the first place.
15          THE COURT:  Thank you.  Understood.
16          So that's the kind of thing that -- it's helpful for
17    me to see what efforts you've taken to find other counsel.
18          I'd advise that you not tell me in your motion what it
19    is that you've been told by your lawyers, just because there's
20    some protection for the communications that you have with a
21    lawyer in consultation regarding a possible case, and I won't
22    ask you ever what your lawyers or potential lawyers counsel
23    you, and you shouldn't --
24          MR. JONES:  All right.  So I'll go forward then.
25          THE COURT:  Thank you.
```

I5TVJONC

1          And you shouldn't volunteer it either, lest you lose

2     the benefit of that attorney-client privilege for that

3     communication.

4          MR. JONES:  Yes, sir.

5          THE COURT:  So we'll talk about the process going

6     forward.  Mr. Jones, I'll send you a form of that order.  And

7     it may be that I'll be able to find counsel who will be

8     interested in representing you either in the case as a whole or

9     for limited purposes in connection with discovery in the case.

10    But you can understand why it is that it can be difficult for

11    the Court to find counsel in these circumstances.

12          MR. JONES:  Yes, sir.

13          THE COURT:  Thank you.

14          So Mr. Jones, just a couple of words about my role

15    here just to put some context around our conversation.

16          As you know, I'm neutral.  As a result, I can't really

17    provide you with advice about what to do in connection with

18    your case or guidance about how to litigate it.  I'll try to

19    provide you with some overview of some of the applicable legal

20    principles that apply here.

21          MR. JONES:  Yes, sir.

22          THE COURT:  At the same time, because there, simply

23    put, is so much law out there, I'm not going to be able to

24    provide you with a complete description of all of the law or

25    legal principles that apply in the case.

I5TVJONC

1          MR. JONES:  Yes, sir.

2          THE COURT:  Thank you.

3          I apologize that I can't, and unfortunately I need to

4     refer you to the relevant --

5          MR. JONES:  I understand a little bit.  I understand

6     the fact that you have to be neutral, so neither party can say

7     he was judicial or bias.

8          THE COURT:  Thank you very much.

9          I appreciate that, Mr. Jones.

10          So let me just say a few words then about what we are

11     going to do next in the case.

12          First, Mr. Jones, did you see my most recent order in

13     connection with the complaint?  I both granted in part and

14     denied in part the motion to dismiss that had been filed in

15     November.  I entered that order granting in part and denying in

16     part the motion to dismiss on April 12th.

17          MR. JONES:  And I believe you sent me something to

18     sign and mail back.

19          THE COURT:  No -- oh, yes, I did.  I granted you 30

20     days to replead the two claims that I dismissed; and asked you

21     to submit back to me an amended complaint if you wanted to

22     amend those claims in response to my opinion.

23          I haven't gotten anything back from you.  So the most

24     recent order that I issued said, in essence, that I understood

25     that you chose not to amend your complaint and, therefore, that

I5TVJONC

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | the case would be going forward against defendants with respect              |
| 2  | to the remaining claims in the case, namely, those that I did                |
| 3  | not dismiss.                                                                 |
| 4  | MR. JONES:  I believe I signed and sent everything                           |
| 5  | back, even from November.  But I was in -- I was in Special                  |
| 6  | Housing Unit, in the box.                                                    |
| 7  | THE COURT:  Thank you.                                                       |
| 8  | So Mr. Jones, do you understand that now we're going                         |
| 9  | forward with your case with respect to the claims that I did                 |
| 10 | not dismiss, and that those will be the claims that we're going              |
| 11 | to be litigating going forward?                                             |
| 12 | MR. JONES:  Yes, sir.                                                        |
| 13 | THE COURT:  Thank you.                                                       |
| 14 | Defendant answered the complaint on May 25th.                               |
| 15 | Have you received the answer yet, Mr. Jones?                                 |
| 16 | MR. JONES:  No, I have not.                                                  |
| 17 | THE COURT:  Thank you.                                                       |
| 18 | I expect that it will be mailed to you promptly, if it                       |
| 19 | hasn't already been sent to you.                                            |
| 20 | Counsel for defendant, have you mailed the answer to                         |
| 21 | Mr. Jones?                                                                   |
| 22 | MR. FAZIO:  I need to check with my associate, your                          |
| 23 | Honor.  I know that we got the answer filed on Friday, so I                  |
| 24 | just need to see if he sent it out on Friday or not.  With the               |
| 25 | holiday weekend it may not have gone out on Friday.  And I will              |

I5TVJONC

1    check.  If it had not gone out on Friday, it will go out today.

2              THE COURT:  Thank you.  I appreciate that.

3              Mr. Jones, you should see defendant's answer promptly.

4              The thing that I want to talk about now, then, is the

5    discovery process in the case.  Let me just say a few words at

6    the outset about what discovery is in a case like this.  And

7    again, unfortunately, I can't provide you with all of the

8    nuance or detail, but I'm going to provide you with an overview

9    of the process in a very general way.

10             MR. JONES:  Yes, sir.

11             THE COURT:  Thank you.

12             So Mr. Jones and counsel, the discovery process in a

13   civil case such as this is designed to allow the parties to

14   find out relevant facts that support their claims or defenses

15   in the case.  It also gives parties the opportunity to develop

16   expert testimony that they can use to support their claims or

17   defenses.

18             There are a number of tools that are available to

19   parties in civil litigation.  These tools are equally available

20   to you, Mr. Jones, as they are to the defendant.  Among the

21   tools that are available to the parties are the right to

22   subpoena third parties for testimony or for documents.  You

23   also have the right to make requests of other parties for oral

24   testimony through a deposition, for documents, through requests

25   for documents, for answers to written questions, which are

I5TVJONC

1    called interrogatories, and also admissions where you ask the

2    other side to admit that certain facts are true.  All of these

3    tools and others are available to both parties during the

4    discovery period and they are available to both sides.

5            And just a quick moment to note one of the

6    differences, again, between civil cases and criminal cases.

7            In a civil case each party has to specifically request

8    most of the information that it wants in connection with the

9    case.  So in a criminal case the government is required to

10   provide a criminal defendant with what's called "discovery" in

11   those cases; and the defendant is entitled to receive that as a

12   matter of course.

13           In a civil case in federal court, parties are only

14   entitled to receive a limited category of documents and other

15   information as a matter of course without requesting it.

16   Otherwise, parties are required to do work in order to request

17   and then review information from other parties and third

18   parties.

19           So that's a very broad overview of what the discovery

20   process is.  As I said, there are a number of tools that are

21   available, including the ability to request documents, as well

22   as the right to conduct depositions of other parties and

23   third-party discovery.

24           The other thing that parties can do in discovery is

25   they can seek discovery of the other side's experts.  An

I5TVJONC

expert, Mr. Jones, is, very simply, at the most basic level,

someone with specialized skill or training; someone who has by

virtue of that specialized skill, knowledge, training, more

information than is available to a normal layperson.

A classic example -- give me just one moment.

Classic examples of experts includes doctors or

psychiatrists or psychologists or people with other specialized

skill or training, like an EMT.  But experts can come from many

different fields.

I mention this because I expect to be setting

deadlines for the parties to complete both fact discovery and

discovery related to expert testimony that the parties wish to

present in connection with the case.

MR. JONES:  Yes, sir.

THE COURT:  Thank you.

Mr. Jones, do you have any questions?

MR. JONES:  Yes, I actually have maybe two.

I have two claims in your court.  Can you clarify

which claim is this?  Is this against Beth Israel or the

Department of Corrections?

THE COURT:  This case is against Beth Israel.

MR. JONES:  All right.

And if it's possible, can I request a site specialist

to review my medical treatment while I was there to tell if --

what they would have done in the situation and what the

I5TVJONC

1    hospital didn't do?  I would like to request a medical

2    examiner, a psychiatrist, and a therapist, if that's possible.

3              THE COURT:  Thank you.

4              Let me say a few words about that.

5              A psychiatrist or other person who might examine those

6    issues would be an expert, most likely.  They are people with

7    specialized skill and knowledge, training.  And such a person

8    might indeed be valuable or necessary in order for you to

9    present your case to a finder of fact --

10             MR. JONES:  I understand what you're saying.

11             THE COURT:  -- with the Court.

12             The next question is whether or not you can get such a

13   thing.

14             MR. JONES:  Excuse me, sir.

15             THE COURT:  Please go ahead.

16             MR. JONES:  I particularly meant like one of my

17   doctors from Bellevue Hospital that I was treated.  I was

18   treated in Bellevue Hospital maybe two or three weeks before I

19   went to Beth Israel.  And the care and treatment that I've had

20   there for my mental health issue was met.  And I believe that

21   if my mental health issue was met and tooken care of at Beth

22   Israel, I wouldn't be in the situation I'm in now.  They

23   released me without medication; and without medication or

24   without 24-hour surveillance of a psych eval, because I

25   threatened to kill myself and someone else, and they released

I5TVJONC

1   me.  And I would like my doctor that I usually go to to testify
2   what the proper procedures should have been.
3           Also, the EMT that took me to Beth Israel, when the
4   EMT picked me up, I asked them to take me to Bellevue, but they
5   said Bellevue was too crowded, and they decided to take me to
6   Beth Israel anyway.  So I would like the EMT to be present too
7   to be as a witness in my defense stating that I requested to go
8   to a hospital that could cater to my mental health needs, and
9   that my needs wasn't met at Beth Israel.
10          THE COURT:  Thank you.
11          Understood.  Let me just say a couple of words about
12  this.
13          First, I don't take a position on whether or not you
14  can or should call those people to testify.  I'll comment as an
15  aside that that sounds as though it would be a reasonable
16  request.
17          The principal thing I want to tell you, Mr. Jones, is
18  that the request for them to testify or to get information from
19  them in the first instance isn't directed to me, the Court,
20  it's directed to them.  So I will not be figuring out what's
21  best to develop your case or seeking out witnesses to get them
22  to appear on your behalf.
23          MR. JONES:  Subpoena them to testify --
24          THE COURT:  I'm sorry, Mr. Jones.  Mr. Jones, can you
25  please not interrupt me?

I5TVJONC

1        MR. JONES:  Yes, sir.

2        THE COURT:  So I can't do those things.

3        Mr. Jones, if you would please just bear with me.  If

4   I'm providing you with more information than you need, that's

5   because I don't know how much you know.  And so I'd appreciate

6   your patience as I go through this, because I'm going to come

7   to the question of subpoenaing them yourself, which is the next

8   step.

9        So because I can't do things independently for you,

10  Mr. Jones, you do, however, through this discovery process that

11  I was describing before, have a number of tools available to

12  you to find information on your behalf in support of your case.

13  Those are the discovery-related processes that I described

14  earlier.  And as I advised you earlier, that includes the right

15  to subpoena third parties.

16        Did you hear me say that earlier, Mr. Jones?

17        MR. JONES:  Yes, sir.

18        THE COURT:  Thank you.

19        Now, to the extent that you wish to subpoena a party

20  to provide testimony through a deposition or otherwise in your

21  case, you have the power, as part of the discovery process, to

22  do so.  If you wish to request that the Court have a subpoena

23  served on your behalf that you have created, you can make that

24  request to the Court, for the Court to assist you in serving a

25  subpoena.  But the Court doesn't draft the subpoenas, and

I5TVJONC

1   doesn't take its own initiative to do so, and will not ask for

2   someone to appear based on your oral request to the Court.

3           So to the extent that there are parties that you -- or

4   persons that you wish to obtain information from, you can

5   certainly use the discovery processes available to you to

6   request that information.  And the Court stands ready to assist

7   you in serving subpoenas on third parties.

8           In order to do so, you'll need to provide the Court

9   with both a completed subpoena and a correct what we call USM

10  form, United States Marshals form, with the proper address of

11  the third party, together with a request that the Court order

12  service on that person.  You're entitled to that support

13  because you're proceeding here *in forma pauperis*.

14          So the Court can assist you in that regard.

15          MR. JONES:  This is why I'm requesting legal

16  assistance, because I don't know how to do any of this stuff.

17          THE COURT:  Thank you.  Understood.

18          And again, the same series of issues that I

19  articulated earlier.  Unfortunately, while parties have their

20  right to proceed pro se in these cases, you're not entitled to

21  counsel.  And while you're able to pursue these cases on your

22  own behalf, unfortunately, all of the admittedly complicated

23  legal rules continue to apply.  And unfortunately, you're asked

24  to comply with them despite the fact that you don't have the

25  specialized knowledge of a lawyer.  And I understand the

I5TVJONC

| | |
|---|---|
| 1 | difficulty of that and I am sorry there's not a clear-cut |
| 2 | solution to it.  The issue that you face, Mr. Jones, |
| 3 | unfortunately, is one that attaches to many pro se litigants |
| 4 | such as yourself. |
| 5 | MR. JONES:  I understand. |
| 6 | THE COURT:  That said, as I said earlier, I will send |
| 7 | you a form of motion that you can submit back to me to request |
| 8 | that I appoint counsel on your behalf. |
| 9 | Good. |
| 10 | So I'm going to set a deadline now for the parties to |
| 11 | complete discovery in the case.  I'd like to set a period of |
| 12 | time that will permit the parties to complete both fact and |
| 13 | expert discovery.  I'm going to propose that I provide the |
| 14 | parties with a grand total of five months to complete fact |
| 15 | discovery in the case, and then with an additional 45-day |
| 16 | period to complete expert discovery in the case. |
| 17 | Let me hear from you, counsel for defendant. |
| 18 | Is that an adequate period of time? |
| 19 | For Mr. Jones's sake, let me say that that is a longer |
| 20 | period of time than I typically permit.  And I'm proposing a |
| 21 | relatively long period of time in this case in large part to |
| 22 | accommodate the fact that you're currently incarcerated; to |
| 23 | give you extra time to get in to do this work. |
| 24 | Let me hear from counsel for defendant. |
| 25 | MR. FAZIO:  Yes, your Honor. |

I5TVJONC

1        Peter Fazio on behalf of Beth Israel.

2        While I greatly appreciate that the five months is

3   normally a longer period of time, I am fine with that

4   currently, with the caveat that at times it's difficult to

5   communicate with Mr. Jones because of his current

6   incarceration.

7        I envision fact discovery, including certain requests

8   where Mr. Jones will have to execute authorizations for our

9   office to actually obtain the medical records that we believe

10  would be relevant to this litigation.  So for example, getting

11  Mr. Jones's prior health records, both internist and psych

12  records, as well as records relating to his current

13  incarceration, which he alleges is because of the negligence in

14  this case.

15       So I totally understand the five months.  My only

16  point is if at or around -- not at the end, but at or around

17  the middle of that time frame we are having difficulty

18  obtaining paper discovery, if it would be acceptable to the

19  Court that we contact the Court, let the Court know that we may

20  need an extension based upon those difficulties.

21       MR. JONES:  Can I ask a question?

22       THE COURT:  Please do, Mr. Jones.

23       MR. JONES:  If the defense would send me the form to

24  sign -- to sign so I could release my medical records to him,

25  unless he could send it to me certified mail and then it

I5TVJONC

```
 1   returns directly back to him, that would mean that the officers
 2   would have to bring it directly to me.  And I will sign it so
 3   that they can get all the information that they need, if that
 4   would be okay with the Court.
 5           THE COURT:  That's good.  Thank you very much.
 6           I am going to direct that the HIPAA releases, which
 7   are the releases that counsel for defendant is referencing, be
 8   delivered to plaintiff promptly.  My request will be that,
 9   plaintiff, you return them to defendant also very promptly.
10   I'd like to make sure that that happens within the first three
11   weeks following today so that it does not become a gating item.
12           MR. FAZIO:  And your Honor?
13           MR. JONES:  Yes, sir.
14           MR. FAZIO:  Your Honor, again, it's Peter Fazio.
15           If I may ask Mr. Jones a question, if that's all right
16   with the Court, which may help expedite this process.
17           THE COURT:  Please do.
18           MR. FAZIO:  Okay.  Mr. Jones, do you currently have
19   health insurance or did you have health insurance at the time
20   you went to Beth Israel, whether it's medicaid or medicare or
21   something else?
22           MR. JONES:  I believe my health insurance was
23   activated by the time I went to Beth Israel.  But there was
24   times during I was at other hospitals I didn't have insurance;
25   but my insurance was on at Beth Israel.
```

I5TVJONC

1          MR. FAZIO:  That's okay.  I was just --

2          MR. JONES:  I believe I have insurance now too.

3          MR. FAZIO:  That's totally okay.

4          I was just wondering if the name -- because what I'll

5    do, Mr. Jones, is I'll try to fill out as many of those HIPAA

6    authorizations as I can.  I'll even send some blank ones where

7    you can fill in the treaters that you've gone to.  Because

8    normally we obtain that information from looking at insurance

9    records that say that Mr. Jones went to Doctor A or Doctor B.

10   And I can then --

11         MR. JONES:  If you don't mind me cutting in.

12         I also have copies of all my medical records now from

13   these hospitals, but it's just that I don't have the money to

14   make copies to mail them out.  They charge me by the -- they

15   charge me the weight of the envelope.  Also to make copies of

16   all my medical records, I'm going to be charged.  With the

17   HIPAA form, everything will be free.

18         MR. FAZIO:  That's okay.  We'll send you those HIPAA

19   forms, like the judge instructed us to do.

20         I just need to know -- I'm going to send a bunch that

21   are blank, because I don't know who you treated with at this

22   point.  But when you had insurance, do you know if it was -- do

23   you know the name of that insurance company?  Because I'll send

24   you one for that.

25         MR. JONES:  Fidelis.

I5TVJONC

1          MR. FAZIO:  Fidelis.  Okay.

2          THE COURT:  Good.

3          MR. FAZIO:  And just other than Beth Israel, did you

4    have any other treaters that you can think of that you were

5    going to --

6          MR. JONES:  It's numerous.  I went to Bellevue, I went

7    to Harlem Hospital, I went to Woodhull.  I used to get psych

8    treatment at a place called St. Mary's in lower Manhattan

9    between Second and First on St. Mary Street.  I've been getting

10   mental health while I'm incarcerated.

11         MR. FAZIO:  And do you have a regular doctor that you

12   would go to just for checkups and things like that?

13         MR. JONES:  Mostly I would go to Bellevue Hospital.

14         MR. FAZIO:  All right.  So we'll send you some

15   authorizations for the providers that you listed and Fidelis,

16   and we'll get those out to you today; if not today, early

17   tomorrow morning.  And there's a section on those, Mr. Jones,

18   that requires that they be notarized.  I don't know if you have

19   access to a notary.

20         MR. JONES:  That's going to be hard because of the

21   housing unit I'm in, I'm in protective custody, so they don't

22   allow anyone to come around us, and they usually just keep us

23   locked in our cell.  And it's hard for me to get like legal

24   work done, because I would have to put the letter in a mailbox

25   for them to sign it.  But when a notary get the HIPAA form,

I5TVJONC

| | |
|---|---|
| 1 | he's going to need me present to notarize it, and he won't |
| 2 | notarize it if I'm not present.  And they usually don't take us |
| 3 | out of our cells because I'm in protective custody. |
| 4 | MR. FAZIO:  Okay. |
| 5 | Your Honor, if Mr. Jones gets to the point where he |
| 6 | can't have that form notarized is it okay with the Court if -- |
| 7 | and when I get those back, if they are not notarized, I send |
| 8 | the Court subpoenas with the authorization and I'll write up |
| 9 | the reason why they are being subpoenaed as opposed to just |
| 10 | using the HIPAA authorization? |
| 11 | THE COURT:  You may.  And please do. |
| 12 | MR. FAZIO:  I'm not 100 percent that will work.  I've |
| 13 | seen those sent back, even when judges like yourself sign them, |
| 14 | but that's one way we can try to get these records. |
| 15 | THE COURT:  Fine. |
| 16 | And please let me know if some direction is necessary |
| 17 | in order for me to permit Mr. Jones to have a notary |
| 18 | countersign his signatures.  That may be most efficient. |
| 19 | MR. FAZIO:  Okay. |
| 20 | THE COURT:  So -- |
| 21 | MR. JONES:  And whatever -- sorry. |
| 22 | Whatever records that they get, can I also have two, |
| 23 | just in case I'm missing anything? |
| 24 | MR. FAZIO:  I'm going to send some blank ones. |
| 25 | Normally, Mr. Jones -- |

I5TVJONC

1          MR. JONES:  I'm talking about when you receive the

2     records, the medical records.

3          MR. FAZIO:  Yes.  Oh, I can make a copy of those and

4     send them back to you.  So what I receive I'm happy to send to

5     you.

6          MR. JONES:  Thank you.

7          MR. FAZIO:  Yes.

8          THE COURT:  Good.

9          So Mr. Jones and counsel, I'm going to issue an order

10    that will set deadlines for all of the elements of discovery

11    here.  We'll set a deadline for fact discovery about five

12    months from now; expert discovery sometime after that.

13         The principal thing I want to highlight now is that

14    you really do need to do affirmative work in order to meet

15    these deadlines.  My expectation is that you will complete your

16    work in connection with the discovery in this case by these

17    deadlines.  So please, when you get my order setting the series

18    of deadlines, be prepared to do some work in order to meet

19    them.  I will grant extensions of time for good cause shown,

20    but only if good cause is shown, which will require you to show

21    me why there's a good reason for me to add additional time for

22    you to conduct discovery.

23         I'm going to issue that case management plan which

24    will contain those deadlines later today or tomorrow.  If you

25    have any questions about the discovery process as a whole,

I5TVJONC

1    Mr. Jones --

2              MR. JONES:  Yes, sir.

3              THE COURT:  -- please feel free to -- first, if you

4    can get access to it, go to your law library, that is the

5    principal avenue.  But second, there's a meet-and-confer

6    obligation under the Federal Rules of Civil Procedure.  So if

7    there are disputes or issues that you have regarding the

8    discovery process, first port of call to discuss the dispute is

9    counsel for defendant, if you cannot resolve an issue or if

10   there's another issue that you want to bring to my attention,

11   you should feel free to write me and I will schedule a

12   conference like this or issue an order in response.

13             One thing that I'd like to ask you to do, if I can,

14   Mr. Jones, is just to remember that you should let the Court

15   know if you are moved to a different facility so that we have

16   your address.

17             MR. JONES:  Can I also have your address so I can

18   write you if I need to?

19             THE COURT:  Yes.  You should send it to 500 Pearl

20   Street, New York, New York, 10007.  And you're not going to

21   direct it directly to me.

22             MR. JONES:  To the clerk.

23             THE COURT:  That's right.  You'll send it to the pro

24   se clerk, who will then review the information.  They will most

25   likely file it on the public docket of the case, and then also

I5TVJONC

1  forward the original of the document to me.

2          MR. JONES:  Can you repeat that last part again?  File

3  it under what?

4          THE COURT:  Everything that happens in federal court

5  here is presumptively public.  And so if you send me a letter,

6  the clerk will file it on the docket of the case.  The docket

7  is basically the electronic record of the case as a whole.

8  It's available to lawyers and other people who have access to

9  the public docket system.  So presumptively correspondence that

10  you send to me will be filed on that docket and will be made

11  public.

12          If there's something that you want not to appear on

13  the public docket, you should specifically identify that at the

14  very beginning of a document.  That will hopefully get it to me

15  for me to decide whether or not it can be filed in a private

16  way.  But you should understand --

17          MR. JONES:  I apologize.  The officer just looked at

18  me and said I have two minutes left.

19          THE COURT:  That's fine.  I think that we are winding

20  down, in any event.

21          MR. JONES:  Can I make one last request?

22          THE COURT:  Please.

23          MR. JONES:  If you don't mind, all due respect, is it

24  possible, can I get the minutes from each time that we had a

25  conference just so I could -- like a lot of things I'm not

I5TVJONC

| | |
|---|---|
| 1 | going to remember.  And I'm writing stuff down as we're |
| 2 | talking.  So if it's possible, can I please have the minutes |
| 3 | from each conference please? |
| 4 | THE COURT:  Thank you. |
| 5 | I will ask defendant to request the transcript of |
| 6 | today's conference and to mail it to plaintiff when it's |
| 7 | available. |
| 8 | Will you please do that, counsel? |
| 9 | MR. FAZIO:  Yes, your Honor. |
| 10 | THE COURT:  Good.  I'm not setting that as a standing |
| 11 | order, but I do so with respect to this one. |
| 12 | Good.  So I'll issue an order later today. |
| 13 | Counsel and Mr. Jones, is there anything that I can do |
| 14 | to help you resolve this case amicably, in other words, |
| 15 | Mr. Jones and counsel -- |
| 16 | MR. JONES:  If the defendant was willing to reach a |
| 17 | settlement, then we wouldn't have to go further. |
| 18 | THE COURT:  Good.  I'd like to encourage you to talk |
| 19 | about that.  I think it's important. |
| 20 | Let me ask, is this something that the parties would |
| 21 | like to talk about initially on your own or would it be helpful |
| 22 | for me to enter a reference to a mediator or to the assigned |
| 23 | magistrate judge to help with the conversation? |
| 24 | Counsel for defendant? |
| 25 | MR. FAZIO:  Your Honor, my client is always willing to |

I5TVJONC

1   listen to demands.  If I receive one, I'll bring it back to my

2   client.  I do think it would be beneficial to stay before your

3   Honor.  I believe that only because of the, again, difficulty

4   in accessing and speaking with Mr. Jones, it seems that when

5   you order a conference, that that occurs.  And so I would not

6   mind staying before the Court if Mr. Jones does make a

7   reasonable demand that I think would be beneficial to

8   responding to.

9                THE COURT:  Thank you.

10               Let me do this:  I'm going to drop off this call now,

11   Mr. Jones.

12               MR. JONES:  Yes, sir.

13               THE COURT:  If you can tell counsel for defendant what

14   your demand is to resolve this case after I drop off the line,

15   I'd ask you to please do that.

16               Let me just say that I'd ask that both sides be

17   reasonable in your expectations with respect to this; and that

18   you take into account the difficulty of litigating this case

19   and the cost associated with that.

20               So to the extent that there's a possible resolution

21   that can be decided on quickly, that would save the cost of

22   litigating this for defendant, I think that both sides have a

23   good reason to decide that.  I think a lot of that will depend

24   in part, Mr. Jones, on whether or not --

25               MR. JONES:  Being reasonable.

I5TVJONC

1          THE COURT:  Correct.

2          MR. JONES:  Yes, sir.

3          THE COURT:  Good.

4          I'm going to drop off the line.  Thank you both.

5          I hope you feel better, Mr. Jones.  Please let me know

6   if you're able to reach a resolution.

7          And counsel?

8          MR. FAZIO:  Yes.

9          THE COURT:  Please let me know if you need additional

10  time to talk with Mr. Jones.  I can also order a separate

11  conference for you two to talk about settlement, apart from the

12  Court.

13         MR. FAZIO:  All right.  Thank you so much.

14         THE COURT:  Good.  Thank you, both.

15                         *    *    *

16

17

18

19

20

21

22

23

24

25